## GATES v. REYNOLDS.

DEED OBTAINED BY FRAUD: EVIDENCE. Evidence discussed in an action to set aside a conveyance of land, alleged to have been obtained by fraud.

*Appeal from Dubuque District Court.*

WEDNESDAY, JUNE 3.

THE action was originally brought at law to recover the value of a farm conveyed by plaintiff to defendant in payment of which defendant obligated himself to discharge certain liens thereon, and conveys lands situated in Allamakee county in discharge of the balance of the purchase price, to be taken by plaintiff at $10 per acre. The petition at law alleges that defendant made certain false and fraudulent representations as to the quality, character, and location of the lands, whereby plaintiff was induced to convey the farm to him. There was a trial, and verdict and judgment for plaintiff in the law action, but upon appeal to this court the cause was reversed and remanded. See 13 Iowa, 1. After the cause was again in the District Court, plaintiff filed an amended petition in equity, setting up particularly the transaction between the parties, the contract of sale of the farm to defendant, and defendant's obligation to pay the incumbrances thereon, and to convey to plaintiff the lands in Allamakee county, which is embodied in a bond executed by him. It also fully sets out the representations made by defendant as to the character, location and quality of the lands, which are alleged to have been false and fraudulent, and that plaintiff, relying upon their truth, was induced thereby to convey his farm to defendant. By the terms of defendant's bond he was to convey to plaintiff land sufficient to discharge the balance of the purchase price of the farm to be selected by plaintiff out of about 1,700 acres owned by defendant in Allamakee county. The relief asked is, that the conveyance to defendant of the farm in question be cancelled, and defendant be required to re-convey the property to plaintiff, and in case he has conveyed it away that, by proper decree, he be required to pay to plaintiff the value thereof, with such sum as it may be shown he realized therefrom in the way of rents and profits. The cause was transferred to the chancery docket, and defendant answered the petition denying the fraud and misrepresentations alleged therein; that he in good faith paid off the liens on the farm as he was bound to do, amounting to more than the sum of $3,000, and that long before the filing of plaintiff's

equitable petition he had sold and conveyed the farm in good faith. He offers to convey to plaintiff the lands to be selected under the bond, and avers that he has always been ready and willing so to do; that as plaintiff has refused to select them, he has been unable to convey them to him, and as plaintiff has failed to pay the taxes, defendant has been obliged to do so. He asks that, in the final decree, an account of the amount of taxes paid by him be taken, and that he have judgment therefor, which shall be made a lien upon the lands which shall be selected by plaintiff, as he shall be ordered by the court. The original law action was brought to the October term, 1858, of the Allamakee District Court; the venue of this cause was changed to Dubuque county, where, in June, 1868, the amended equitable petition was filed.

March 6, 1872, a trial on the merits, upon bill, answer, and evidence, resulted in the court finding that the allegations of fraud were not sustained, and that plaintiff, therefore, was not entitled to a rescission of the contract, and conveyance made pursuant therewith. The court found that plaintiff, under the contract, was entitled to 740 acres of land, and required him to select the same, and in default thereof, directed the clerk of the court to make such selection. A referee was appointed to ascertain the amount of taxes paid by defendant upon the lands to be selected, since the execution of his bond, for which it was in the decree provided, that judgment should be rendered, and the same should be a lien upon the lands. From this decree plaintiff appeals. Subsequently to the appeal, and subject thereto, plaintiff filed with the clerk a notice indicating the lands selected by him in pursuance of the decree of the court.

*Wilson & Doud*, attorneys for appellants.

*L. A. Hatch* and *Shiras, Vanduzee & Henderson*, for appellee.

BECK, J.—The earnestness, zeal and ability exhibited by appellant's counsel in the presentation of this cause, which was met in a like manner by counsel on the other side, has secured at least repeated readings and study of the evidence, even after a satisfactory conclusion was reached. The confidence expressed by counsel in the opinion that the plaintiff is the victim of a stupendous and most wicked fraud, practiced upon him by defendant, as disclosed by the evidence in the case, has induced us to re-examine it, lest something tending to support such a view should have escaped our attention. But our conclusion that the plaintiff has failed to support, by proof, his allegations of fraud, has been strengthened and our minds, if possible, more thoroughly satisfied by such re-examination of the evidence.

The plaintiff himself, in his testimony, makes out a very clear case in support of his position, and he is, to a great extent, corroborated by the evidence of his wife. He is also supported by the testimony of a son who was a witness upon a former trial, but since deceased. They agree as to the representations made by defendant concerning the quality and location of the land, and this is the gravamen of plaintiff's case. The father and son agree that these representations were made when they and defendant were

alone, no other witness being present.. They were repeated to some extent in the presence of the wife; the trade, however, was made before this, at the conversation just referred to.

On the part of defendant, a witness who was present as the friend of plaintiff, being invited to be present to aid him in the trade by the wife, testifies that no such representations were made; the defendant in his testimony positively denies ever making them. The evidence of this witness, and others who were present, conclusively establishes that prior to the parties coming to an agreement they were not, on that day, with plaintiff's son, apart from other witnesses negotiating upon this transaction. Upon this point the contradiction to the evidence of plaintiff, his wife and son, is positive and complete. Their statements upon this point cannot be recieved as true. The representations, we are well satisfied, were not made in the presence of this witness, and it is impossible to believe that they were made at the time and place as testified by plaintiff, or that they were made at all. There is other evidence, as the admissions of plaintiff, etc., strongly supporting this conclusion, which we will no more particularly notice.

Carefully weighing the whole testimony, our minds are brought to the satisfactory conclusion that defendant made to plaintiff at no time representations in regard to the land that induced him to enter into the contract. The trade was rather hastily and improvidently made on the part of plaintiff. The witness who acted as his friend, and others, advised him to visit and inspect the land he was to receive from defendant, before entering into the contract. For reasons that do not very plainly appear, he refused to do so. He asked no guaranty of defendant as to the quality and location of the land, and we can find no grounds upon which to base the belief that any representations upon the subject were made by defendant. While the transaction on the part of plaintiff was certainly not wisely made, and he doubtless had the worst of the bargain, we are unable to say that he was, in the least degree, induced to enter into it by anything said or done by defendant.

But we are satisfied his loss by the trade is vastly magnified by himself and counsel. The farm he conveyed to defendant certainly was not worth more than $5,000—he had offered to sell it for a less sum about that time. There were incumbrances upon it, which defendant paid, to the amount of $3.016. Plaintiff receives 740 acres of land in Allamakee county, which, from the testimony of his own witnesses, must have been worth at the time of the trade near $2,000. A very few hundred dollars would cover his loss in the transaction, if he sustained any.

It is claimed by counsel that plaintiff was embarrassed by judgments and was an inebriate. All this may be admitted. But defendant did not urge the trade nor induce it by false representations nor by persuasion, neither was he a creditor of plaintiff, and when it was made plaintiff was sober and surrounded by his wife, son and friends.

But it is not profitable, and it is not our custom so to do, to discuss further the evidence. A discussion that would give a full understanding of the evidence would extend this opinion to an undue length.

Plaintiff claims, and so testifies, that defendant agreed that if, upon viewing

the land he did not like it, and it did not comply with plaintiff's representation, he had, under the contract, the right to refuse to accept it and the balance of the purchase price of the farm was to be paid by defendant, in cash. He is supported by his son and wife upon this point, but they are all as successfully contradicted here, and in the same way as upon their testimony on other points above noticed. There are other circumstances and facts which strongly contradict the statement and render it highly incredible. Some of them are as follows: No such a stipulation is in the written contract or bond executed by defendant. Most clearly does the evidence show that the farm was not worth more than $5,000. Yet in the writings the price is put at $10,400 and the lands are to be taken in payment at $10 per acre. Neither of the parties could have been ignorant of the true value of the farm. What reason they had for putting such values on the property of both parties in the writings do not clearly appear, but that the price named for the farm was more than twice its real value there can be no doubt. Now it is unreasonable to suppose that defendant, by making such an agreement as is testified to by plaintiff, would have rendered himself doubly liable for twice the value of the property he purchased.

Reaching the satisfactory conclusion that plaintiff has failed to establish fraud by false representations made by defendant, and has not succeeded in proving that there was an agreement of the parties not incorporated into the writing, through the mistake, oversight or design of any one, we find it unnecessary to pass upon any of the points of law discussed by counsel. These involve the right of plaintiff to rescind the contract under the circumstances of the case, the jurisdiction of the court to rescind the contract (the farm conveyed being in the State of Indiana) and other questions of law. Neither do we find it necessary to doubt the doctrines and rules of law upon the subject of fraud—the evidence establishing it and its effects and consequences to the rights of the parties—which are announced by plaintiff's counsel and supported by a brief exhibiting great research and learning. In the light of these rules, so far as they are applicable, we have pursued our inquiry in this case. Failing to establish the representations alleged to be fraudulent and the agreement omitted in the writing, plaintiff is entitled to no relief.

There is no objection to the decree requiring judgment in favor of defendant for the taxes paid by him. Its provisions in regard to a referee, etc., will be enforced by proper proceedings and orders in the District Court.

AFFIRMED.